## POWER *a.* ALGER.

*Supreme Court, Third District; General Term, December,* 1859.

### SUBROGATION.—INJUNCTION.—RECEIVER.

An assignment having been made to a firm in trust, to secure it from liability upon its indorsements for the accommodation of the assignor, one of the firm dying, some of the surviving partners indorsed, in their individual names, new notes given by the assignor in satisfaction of the old ones. *Held,* that the sur-

vivors were not entitled to the benefit of the assignment as security for their indorsements of the new notes, either by way of subrogation or otherwise.

An injunction should not be allowed, nor a receiver appointed, to prevent a defendant from disposing of ordinary commercial property, where the title is in any doubt, and the pecuniary responsibility of the defendant is unquestioned.

Appeal from an order vacating an injunction, and another denying a motion for the appointment of a receiver.

The facts upon which the original motions were made are stated in the following opinion, rendered at special term, in July, 1859.

WRIGHT, J.—The material question is, whether the plaintiffs are entitled to the aid of a court of equity to enforce, for their benefit, the agreement of the 15th of February, 1858.

The agreement was with the firm of Coffin, Holmes & Co., and was made to protect such *firm* on their then present and future indorsements. That firm had indorsed for the firm of A. H. McArthur & Co. a large amount of paper; and to secure and save such indorsers harmless, McArthur & Co., the makers of such notes, by Abner H. McArthur, executed and delivered to them the said instrument in question. This instrument assigned the stock in trade of A. H. McArthur & Co., to the value of over $19,000, and also their books of accounts, and all debts due to them on said books, or that might become due and owing during the existence of the notes specifically mentioned in the instrument, or any other indorsements not therein specified. The books of accounts, and claims, and demands were to remain in the possession and control of A. H. McArthur & Co., they collecting the accounts and using the money in their business as they thought proper, until the firm of Coffin, Holmes & Co. elected to take possession of the same. This the latter firm were empowered to do at any time, for their indemnity and protection. The agreement authorized them to take possession of the books, and collect the accounts, and with the proceeds pay the outstanding notes indorsed by them, together with a note held against the firm of A. H. McArthur & Co. by Lemuel Holmes. When the notes indorsed by the firm of Coffin, Holmes & Co. were fully paid, and such firm fully indemnified and saved harmless from the same, and all costs, expenses, and damages on account thereof, the sale and assignment was to become void, and the books returned to A H.

McArthur & Co., and also any surplus of moneys Coffin, Holmes & Co. might have collected on said accounts.

The firm of Coffin, Holmes & Co. was dissolved by the death of Peter G. Coffin on the 3d of December, 1858, and while the copartnership existed, the account-books of A. H. McArthur & Co. remained with the latter firm, they collecting such accounts and using the proceeds in their business, and making new accounts. When the firm of Coffin, Holmes & Co. ceased to exist, such firm were indorsers of the paper of A. H. McArthur & Co. to the amount of about $12,000. The survivors of such copartnership continued to allow McArthur & Co. to retain the books, collect the accounts, and use the proceeds; and Power and Holmes, two of the surviving members of the firm, individually indorsed notes made by McArthur & Co., given to pay and discharge, as they matured, the outstanding notes that had been indorsed by Coffin, Holmes & Co.; so that when this suit was commenced, there were no notes indorsed by such firm outstanding and unpaid, except a note given to one Hazzard, on which was due about the sum of $425, and that note has since been paid. The agreement, therefore, being made with and for the protection and indemnity of the firm of Coffin, Holmes & Co., and there being no notes outstanding indorsed by such firm, it would seem to have fully performed its office, and by its terms has become void, unless as regards the individual note of Holmes. Prior to the dissolution of the firm of Coffin, Holmes & Co., a note for $2,000, given to Peter Snyder, indorsed by such firm, and which was mentioned in the agreement, matured, and in place thereof there was substituted a note for the same amount, payable in one year from date, and made by Abner H. McArthur, Charles McArthur, Jacob W. Hoysradt, Charles C. Alger (the defendant), and George H. Power (one of the plaintiffs). After such dissolution and the death of Peter G. Coffin, Power and Holmes individually indorsed two or three notes, and these were outstanding and unpaid at the commencement of the present action. I do not think that either of these notes indorsed by Power and Holmes, nor that signed with others by Power alone, are covered by the terms of the agreement. The contract is to secure the payment of notes *indorsed* by the *firm* of Coffin, Holmes & Co., not those drawn or indorsed individually by two members of such

firm. I do not see how it can be held that *Power* and *Holmes* have become individually secured by the terms of the contract. That would be making a new contract for the parties, which they have failed to make for themselves. Nor have *Power* and *Holmes* become subrogated or substituted in the place of Coffin, Holmes & Co., in respect of the security provided in the instrument of February, 1858 ; no money has been paid by either, and no note indorsed by Coffin, Holmes & Co., has been paid by them. No suit on any such paper has ever been commenced against them, and so far from having paid their own paper, they have allowed it to go to protest.

The equitable doctrine of subrogation has no application to the case.

The security, therefore, not being for the benefit of *Power* and *Holmes* individually, or intended for their individual benefit, they are not entitled to enforce or have it enforced by the surviving members of the firm of Coffin, Holmes & Co. ; nor can such surviving members maintain the suit for the benefit of the $700 note alleged to be held by Lemuel Holmes. The instrument was not given to secure this debt ; it only allowed Coffin, Holmes & Co. to take possession of and to sell the assigned assets, in order to pay the indorsements of that firm. If there were no outstanding notes indorsed by the firm, then no one could take the account-books from A. H. McArthur & Co., though the Holmes notes were unpaid. It was only when Coffin, Holmes & Co. had acquired possession of the accounts and assets, and had sold to pay *their* indorsements, that any balance of such assets was to be appropriated to the payment of the Holmes note. By the terms in the instrument, the trust in favor of Lemuel Holmes was made to depend upon a contingency, which has not and now can never happen. Holmes obtained no beneficial interest in the trust, unless the contingency happened of a sale by Coffin, Holmes & Co. for their own protection, to pay their own indorsements. McArthur & Co. had the right to make Holmes' security dependent entirely upon just such a contingency as that, and the court cannot now alter or modify those terms.

At the commencement of this action, therefore, there was but a single note indorsed by Coffin, Holmes & Co. outstanding and unpaid. Strictly speaking, this may have been enough to

authorize the survivors of such firm to resort to a court of
equity, to compel the delivery to them of the security provided
by the instrument of February, 1858, and the appointment of
a receiver to collect the accounts and discharge that single lia-
bility. It may be that such survivors, having possessed them-
selves of the books, and been invested with a kind of trust in
the assets collected for the benefit of Lemuel Holmes, would
have been authorized to pay the Holmes note from such assets;
but they would have had no authority to collect the outstanding
accounts of McArthur & Co., and appropriate them to the liqui-
dation and discharge of notes, either signed by Power, or indorsed,
subsequently to the dissolution of the firm of Coffin, Holmes &
Co., by Power and Holmes individually. The existence of the
Hazzard note was enough, probably, to justify the injunction in
the case; but that note having since been paid, leaving no paper
outstanding with the indorsement of Coffin, Holmes & Co., the
question now is, whether the injunction should be continued, and
a receiver appointed to take possession of the account-books
and collect the accounts. I think not. Even if the construc-
tion given to the instrument of February, 1858, be erroneous, no
loss or damage can accrue to Power and Holmes, by allowing
the defendant to obtain the books and collect the outstanding
accounts and claims of McArthur & Co. By their own show-
ing, the defendant was one of the firm of A. H. McArthur &
Co. The outstanding indebtedness consists, 1st, of a note for
$700 given by such firm to Lemuel Holmes individually; 2d, a
note of $2,000 given by members of the firm of A. H. McAr-
thur & Co. individually, on which Power is surety; and 3d, two
or three notes made by the firm of A. H. McArthur & Co., and
indorsed by Power and Holmes. On all these notes A. H. Mc-
Arthur & Co. are primarily liable. The defendant (one of the
firm) is solvent, and it affirmatively appears is fully and abun-
dantly able to pay the above notes, and Power can sue him
and enforce payment. The appointment of a receiver would
seem to be unnecessary, and might, as the bulk of the accounts
are due out of the State, prove impolitic and disastrous. The
court will not order or retain any injunction unless it is
necessary, or a failure to sustain it will result in loss and dam-
age, or there is great and impending danger of it. Here there
can be no such reason assigned, for Holmes and Power, the

only persons who can claim ever to have any interest in sustaining the injunction, are able, in an action at law against the firm of McArthur & Co., of which the defendant was a member, to recover all that they may be compelled to pay, either as surety or indorsers. Though the firm of A. H. McArthur & Co. may be insolvent, the personal pecuniary liability of the defendant to respond to the amount of the indebtedness. is not questioned.

The motion to vacate the injunction must be granted, and that for the appointment of a receiver denied. . Let orders be entered accordingly.

From this decision the plaintiffs appealed.

*J. C. Newkirk*, for the appellants.—I. The agreement of February 15th, 1858, was, among other things, given to secure the payment of the notes then indorsed by Coffin, Holmes & Co., and which might thereafter be indorsed by them, and to fully indemnify and save them harmless from the same, and all costs, expenses, and damages on account thereof. The sale was not to become void until, among other things, the firm of Coffin, Holmes & Co. were fully indemnified and saved harmless from the notes indorsed by them, " and all costs, expenses, and damages on account thereof."

II. The notes indorsed by Power and Holmes, after the decease of Peter G. Coffin, were indorsed by them to renew and continue in part the notes indorsed by Coffin, Holmes & Co., as two of the surviving members, for and on behalf of the survivors in the management and settlement of the affairs of the firm; they having the sole and exclusive control and management thereof.

III. The notes indorsed by Power and Holmes, being indorsed for and on behalf of the survivors of the firm, and in the settlement of the affairs of the firm, and for the benefit of the firm, if they are compelled to pay the notes so indorsed by them, they can charge the amount they are so obliged to pay to the assets of the firm, so that the firm of Coffin, Holmes & Co. will not be " fully indemnified and saved harmless," unless the notes indorsed by Power and Holmes are paid by A. H. McArthur & Co., and thus their indorsements are covered by the agreement of February 15th, 1858.

IV. To hold that the indorsements of Power and Holmes are secured, by the agreement, it is not necessary to hold that Power and Holmes became individually secured by the terms of the contract; it is only extending the agreement to such indorsements as will fully indemnify and save harmless the firm of Coffin, Holmes & Co., within the terms and true intent of the contract.

V. The surviving members of the firm come into court and allege that the notes indorsed by Power and Holmes were to continue the notes in part indorsed by the firm, and on behalf of and for the benefit of the firm; this is not denied by the defendant.

VI. The defendant cannot complain of this; it does not increase his liability; he nor his firm has not paid the notes indorsed by Coffin, Holmes & Co., and it is applying the property assigned to one of the very purposes for which it was assigned.

VII. At the decease of Peter G. Coffin there were notes of A. H. McArthur & Co., indorsed by the firm of Coffin, Holmes & Co., to over $12,000 outstanding: it was the duty of the survivors to protect the partnership effects against these indorsements; to do this, the survivors had a right to renew these notes by notes indorsed by themselves, and bind the effects of the firm, if done in good faith and in order to lessen the liabilities of the firm. If all of the survivors could do this, they could authorize two of their number to do it for them, as in this case. 1. It was for the benefit of the effects of the firm, for thereby the notes indorsed by the firm have been reduced from over $12,000 to $6,225. 2. It was a mode adopted by the survivors to wind up the affairs of the copartnership.

VIII. If Power and Holmes are compelled to pay the notes indorsed by them, it will be so much money paid by them for the benefit of the late firm of Coffin, Holmes & Co., and they would be allowed it on the settlement of the affairs of the firm. For these indorsements were not made by them on their individual account, but on behalf of the survivors, to relieve the effects of the firm.

IX. Hence, if there were no notes in existence but the notes indorsed by Power and Holmes, the action could be maintained; and the injunction was properly allowed, and should be retained, and a receiver appointed.

X. But the assignment was also given to secure the payment of the note of $700 held by Holmes, which it is conceded is still unpaid. The agreement of February 15, 1858, recites the fact of Coffin, Holmes & Co. having indorsed notes for A. H. McArthur & Co.; and the consideration of the assignment or sale is "for the purpose of securing and indemnifying the said Coffin, Holmes & Co. against the notes they have now indorsed, and for future indorsements, and in consideration of one dollar." For this consideration A. H. McArthur & Co. sold the property, accounts, debts, &c., mentioned in the agreement 'to Coffin, Holmes & Co., with power, "at any time they may see proper, to take possession of the books of account, &c." They were to pay from the avails the notes indorsed by Coffin, Holmes & Co., "together with" the note for $700 held by Holmes. And when "said notes" should have been paid fully, &c., then the assignment was to be void and the books returned.

XI. The term "said notes" refers to all the notes before mentioned; this includes the note for $700 held by Holmes, and therefore until this note is paid the agreement is in force, and has not accomplished the purpose for which it was given. One of the purposes for which the assignment was given, was to pay this note. No preference is given, in the assignment, to the notes indorsed by Coffin, Holmes & Co. over this $700 note. The payment of this note is not to be postponed until after the notes indorsed by Coffin, Holmes & Co. are paid.

XII. By the terms of the assignment, the right of Coffin, Holmes & Co. to take possession of the assigned property is not made to depend on the fact of notes indorsed by them being outstanding; nor is such a fair construction of the whole tenor of the instrument. The sale is absolute and unconditional, for the purpose of paying the notes indorsed by Coffin, Holmes & Co. and the $700 held by Holmes, with the power to take possession of the books of account, &c., "at any time" they may see proper, without any condition being mentioned in the agreement. The only contingency upon which this right would depend, is that annexed by law—that some of the purposes for which the assignment was given remain to be accomplished.

XIII. At the time of the demand made by the defendant for the books and demands, and at the time of the commencement of this action, the Hazzard note, on which was a balance due

of $448.33, was outstanding.   1. This note was made by A. H. McArthur & Co., and indorsed by Coffin, Holmes & Co., before the dissolution of the firm by the decease of Peter G. Coffin. 2. So that when the demand was made and the action com-. menced, the plaintiffs, upon any construction of the agreement, had a right to the possession of the books and demands under the assignment.   Having obtained the possession, they could hold them to pay all the notes provided for by the assignment. 3. If it were necessary that some notes or note indorsed by the firm of Coffin, Holmes & Co. should be outstanding, to entitle the plaintiff to the possession of the books and demands, such was the case at the time of the demand and the commencement of this action.

XIV. If the books and demands had been delivered to the plaintiffs when the demand was made, they could have held them to pay the Holmes note, even if the Hazzard note had afterwards been paid.   1. For upon this construction of the assignment, it was only necessary that some note indorsed by Coffin, Holmes & Co. should be unpaid to entitle the plaintiffs to the possession of the books, &c.   2. Then the assignment authorizes them, after obtaining possession, to collect the debts and apply the proceeds to the payment of the notes indorsed by Coffin, Holmes & Co., and the note for $700 held by Holmes, without any preference in payments, or without making the payment of the Holmes note from the proceeds depend on any contingency.

XV. The plaintiffs being entitled to the possession of the books and demands at the time of the commencement of the action, and having brought their action to enforce this right, the court will see to it that all the benefit which would have been derived from a delivery of the books and demands at that time is secured.   1. It is no answer to say that the Hazzard note, which entitled them to the possession, has been paid since the bringing of the action, and thus defeat a further benefit which would have been derived from the possession.   2. This motion is to be treated as if the Hazzard note was still in existence, so far as it is necessary to settle the rights, under the assignment, in regard to the $700 held by Holmes.

XVI. The whole object or subject of this action is to obtain the possession of the accounts and demands, for the purpose of

collecting them and applying the avails as provided in the assignment. 1. If the defendant is permitted in the mean time to collect these accounts and demands, it will be "suffering an act to be done in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual." (*Code*, § 219.) 2. Hence the injunction was properly granted, and it should be continued. (*Ib.*)

XVII. It is also a proper case for the appointment of a receiver; because it is necessary that the accounts should be collected, or many of them will be in danger of being lost. (*Code*, § 244.)

XVIII. The note of $700 held by Holmes being secured by the assignment, the plaintiffs could bring this action; and Lemuel Holmes at the same time bring an action on the note. So that he would get the specific lien on the property assigned, and a general judgment on the note; but if the defendant is permitted to collect the accounts, all that Holmes will get will be a judgment on the note, and lose the other right which he may have under the assignment.

XIX. By the assignment of February 15, 1859, the plaintiffs and Lemuel Holmes obtained a legal right; this legal right the court can only secure to them by sustaining the injunction and appointing a receiver.

XX. The defendant being one of the members of the firm of A. H. McArthur & Co., at the time of the execution of the assignment, is bound by the assignment without actual notice of its execution. 1. "The power of one partner to dispose of the property of the firm extends to assignments of it for antecedent debts, as well as for debts thereafter to be contracted on account of the firm." (*Colyer on Part.*, § 395 ; *Story on Part.*, § 101.) 2. "When several are concerned together in partnerships, notice to one is equivalent to notice to all, provided the transaction be *bona fide.*" (*Colyer on Part.*, § 443 ; *Story on Part.*, § 107.)

*E. P. Cowles*, for the respondent.—I. The assignment was made to secure the firm of Coffin, Holmes, & Co., for indorsements then or thereafter to be made by that firm for the accommodation of A. H. McArthur & Co.

II. There is now outstanding no such paper indorsed by Coffin, Holmes & Co.

III. No more indorsements can hereafter be made by Coffin, Holmes & Co. That firm was dissolved by the death of Peter G. Coffin, one of its members, on the 3d day of December, 1858. None of the paper mentioned in the instrument is now outstanding, except the $700 note held by Lemuel Holmes.

IV. The injunction should not be sustained on account of this $700 of Holmes, for these reasons :

The agreement is a special agreement, allowing Coffin, Holmes & Co. to take possession of the effects named in it only in the contingency of any of their own indorsements remaining unpaid. When they should take possession for that purpose, and should have sold to protect themselves, if any thing remained they were authorized to apply it upon the Holmes note. But Coffin, Holmes & Co. had no power, after payment of their own indorsements, to seize this property for the benefit of Holmes. The contingency as regards Holmes' note, contemplated by the paper therefrom, never occurred. A. H. McArthur & Co. had a right to make such bargain as they pleased ; and the court cannot make a new one for them, or enlarge the powers they saw fit to give Coffin, Holmes & Co. The moment that Coffin, Holmes & Co. were protected upon all of their indorsements, the paper became *ipse facto* void.

V. Neither Power individually, nor Holmes individually, was secured, or intended to be, by the terms contained in the paper. To so hold, would be for the court to make a new contract, other and different from that made by the parties to paper A. Nor are Power or Holmes, for any of the notes they have given, subrogated to the rights of Coffin, Holmes & Co. The complaint shows affirmatively that no money has been paid by either Power or Holmes. No note indorsed by Coffin, Holmes & Co. has been paid by either one of them. What has been done ? Some of the paper made by A. H. McArthur & Co., and indorsed by Coffin, Holmes & Co., matured. McArthur & Co. took up that paper. They paid it. A part of the money with which they paid it was very possibly the avails of new paper made by A. H. McArthur & Co., which was indorsed by Power and Holmes individually. The payment of the paper indorsed by Coffin, Holmes & Co. discharged the claim of that firm upon the property named in paper A. But did the indorsement of the new paper by Power or Holmes give them any

claim under paper A? If so, upon what principle? Not by the terms of the contract. Not by subrogation or the substitution of Power and Holmes in the place of Coffin, Holmes & Co. Subrogation or substitution of the surety or co-obligee in place of the principal creditor or co-surety, with right to the possession of the securities held by such principal creditor or co-surety, takes place only upon payment by the surety seeking the subrogation. But here there has not been one dollar paid by Power or Holmes. So far from it, they have allowed their own indorsements to go to protest.

VI. There is no occasion for either an injunction or for a receiver; nor should either order made below be disturbed. 1. C. C. Alger is, as the papers show, abundantly responsible and able to pay. 2. The principal part of the assets sought to be affected by this suit are debts due by parties living out of this State. A receiver appointed by this court would possess no extra territorial power. An injunction is not granted as of course, and only for urgent reasons and to prevent irreparable injury. Here no such injury can result.

By THE COURT.*—GOULD, J.—As the appointment of a receiver could not properly be made, unless the order of injunction were sustained, the appeal from the order dissolving the injunction may be first considered; for if that appeal be unsuccessful, its decision carries with it that of the appeal from the order refusing to appoint a receiver.

The facts, and the averments in the affidavits, upon which the decision dissolving the injunction was made, may be briefly stated; so far, at least, as I deem them essential on that matter. The plaintiffs claim the title to certain books of account, and the debts of which those books contain the evidence; and also such notes, etc., as were held and owned by the late firm of A. H. McArthur & Co.; and ask the court to appoint a receiver to take and collect the same for the plaintiffs' benefit, and enjoin the defendant from collecting or interfering with the same. The defendant claims that he is a *bona-fide* purchaser of the same for value, and without notice of the prior transfer to the plaintiffs; and that he received the delivery and took possession of

* Present, W. B. WRIGHT, GOULD, and HOGEBOOM, JJ.

the assets at the time he bought.   The plaintiffs aver (in an affidavit which the defendant has had no opportunity to answer), that the defendant was a partner in the firm of A. H. McArthur & Co., and so bound by the transfer by his partners to the plaintiffs; and that he did not pay value for the assets.   The defendant avers that he is abundantly responsible in a pecuniary point of view, both in real and personal estate uncharged and unincumbered; and fully able to respond for a much larger sum than the whole amount in controversy: and this is not denied. The defendant avers that by reason of the nature of the debts, and the residence of the debtors, very great injury must result from passing them into the hands of a receiver; and there is no contradiction of this.   The plaintiffs do not claim that the defendant is not likely to be able to satisfy any judgment they may obtain in the suit in which the injunction was granted; or state that they are likely to sustain any injury in case an injunction be not issued.

It seems to me they make no case for granting the injunction. There is nothing more of it than the common case of a controversy as to the title of personal property between two persons, each perfectly responsible, and each claiming to own the property.   Such a suit needs no aid of the court to prevent the defendant from " doing any act to render the judgment ineffectual."

I should affirm the orders appealed from.

WRIGHT, J., concurred.

HOGEBOOM, J., was for a modification of the order (so as to compel payment of the Holmes note, or that in effect).